**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **PATRICIA A. FREEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 15-9806-JWL** |
| **NANCY W. BERRYHILL,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I. Background

[1]On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning March 10, 2012. (R. 12, 204, 207, 209). At the hearing, she amended her alleged onset date to May 11, 2012. Id. at 12, 30. Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion evidence and did not include all of Plaintiff's limitations in the residual functional capacity (RFC) assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error as alleged by Plaintiff, and affirms the Commissioner's decision. Plaintiff attached 254 pages of records in seven documents denominated as supplements attached to her Social Security Brief. (Doc. 12 (hereinafter, Pl. Br.), Attachs. 1-7). In a footnote to her Brief, she explained that she had supplemented the transcript of the record before the Commissioner "with evidence from a prior file that was used by DDS [(the disability determination service)] to make Ms. Freeman's initial determination in this case but was not properly exhibited" by the Social Security Administration in the transcript of the record which was filed with the court in this case. (Pl. Br. 1, n.1). The Commissioner objects to Plaintiff's supplementation, and argues that it is "not a part of the certified administrative record in this case" (Comm'r Br. 14), that the court is without jurisdiction to consider such evidence outside of the pleadings and the transcript, and that Plaintiff has not demonstrated that a remand to consider that evidence in accordance with sentence six of 42 U.S.C. § 405(g) is appropriate. Id. at 14-15. In her Reply Brief, Plaintiff argues that the evidence with which she supplemented the record is not new evidence, but evidence which was considered by the agency in the initial

determination and was erroneously omitted from the transcript filed with the court. (Reply 1-2). She argues that if, as the Commissioner asserts, the evidence was not considered by the ALJ, the proper remedy would be to remand to the Commissioner for a proper consideration.

The court finds it necessary to consider this evidence and these arguments first, and then considers Plaintiff's remaining arguments in the order presented in her Brief.

**II. Supplemental Evidence**

The Commissioner is correct that 42 U.S.C. § 405(g) is the sole basis for the court's jurisdiction to review a decision of the Commissioner. Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998). And, that statute requires the court to make its decision based on the "pleadings and transcript of the record." 42 U.S.C. § 405(g) (sentence four). But, Plaintiff is also correct that the evidence attached as supplements to her Brief appears to have been used in evaluating her claim at the initial and reconsideration levels of review, since it appears to be included in the listing of "Evidence of Record" in those Disability Determination Explanations. (R. 81-83, 96-98, 116-17, 136-37). However, the evidence in the certified transcript filed with the court does not contain the evidence filed in Plaintiff's supplements, although it includes all of the evidence specifically admitted into the record at the disability hearing held in this case. (R. 32-33); see also (Index1-Index4). At the disability hearing, the ALJ identified all of the exhibits included in the certified transcript of record filed with this

court, asked Plaintiff's counsel if "this file" is complete to the best of her knowledge, and counsel replied, "It is." (R. 33).

These facts beg the question whether any error resulting from a potentially incomplete transcript may have been invited by Plaintiff and would therefore preclude the court, pursuant to the invited error doctrine, from considering the supplemental evidence or from remanding the case for inclusion of the omitted evidence. It is not pellucid that the invited error doctrine applies in this case because although Plaintiff affirmatively agreed that the record was complete as constituted by the ALJ, she did not specifically argue before the ALJ that the record was complete or that the documents later proffered in her supplements should not be included in the transcript of record.

Nevertheless, the court need not decide whether the invited error doctrine applies in this case. Plaintiff did not make a motion for remand to reinstate the allegedly improperly exhibited evidence into the transcript of record, and the only supplemental evidence she relied upon in her allegations of error is one page of a treatment note prepared by Dr. Gernon in April 2010. (Pl. Br. 17) (citing Doc. 12, Attach. 3, p.6 (denominated by Plaintiff as "Tr. 783")).[2] In that treatment note Dr. Gernon diagnosed

---

[2]Plaintiff cites to other supplemental evidence in her Statement of Facts (Pl. Br. 4, 9-10, 11), but she does not rely upon that evidence in support of any argument. The court notes that each page of the supplemental evidence filed as attachments to Plaintiff's Brief is consecutively numbered with handwritten numbers in the lower right corner of each page, beginning with the next higher number after the numbering in the transcript of record, and is cited in Plaintiff's Brief using these numbers. But, if the evidence had at one time been included in the transcript and numbered by the agency, it is almost certain its numbering would have been lower than the "other" F Exhibits since it is dated earlier.

peripheral neuropathy, and the ALJ found peripheral neuropathy is one of Plaintiff's severe impairments. (R. 14). Plaintiff points out that Dr. Gernon recorded her reports of pain, numbness, and tingling in her feet--and the ALJ recognized Plaintiff's peripheral neuropathy symptoms (R. 19)--but the mere presence of symptoms does not require a finding of disability. Plaintiff also asserts that Dr. Gernon prescribed Lyrica to treat her symptoms at that visit. Id. Actually, Dr. Gernon stated that he thought it unwise to start Lyrica immediately "in light of the changes we are going to make," but that he planned to do so later. (Pl. Brief, Attach 3, p.6). Moreover, the ALJ recognized that Plaintiff is taking Lyrica, which was prescribed for her peripheral neuropathy symptoms. (R. 19). The treatment note relied upon by Plaintiff is merely cumulative of evidence recognized and considered by the ALJ and would not change the decision below. Therefore, it does not affect the court's decision in this case, it is immaterial whether it is included in the record or not, and any error in failing to include it in the transcript is harmless.

Plaintiff argues for the first time in her Reply Brief that in affording great weight to Dr. Bergman-Harms's medical opinion, the ALJ implicitly adopted Dr. Jordan's June 2010 report of her consultant examination. (Reply 2). Beyond the fact that an argument raised for the first time in a reply brief is waived, Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co., 777 F.3d 1132, 1142 (10th Cir. 2015), Dr. Jordan's report actually supports the ALJ's determination. (Pl. Brief, Attach. 1, pp.2-4) (Opining that Plaintiff is able to understand and follow directions; that her memory, attention, and concentration is average; that she is able to get along with others; and that she "reports minor mood and

anxiety symptoms."). Plaintiff has not sought remand to correct the transcript of record, and has provided no basis founded in the evidence submitted with her Brief to change the decision below.

## III. Evaluation of the Medical Opinions

Plaintiff claims the ALJ failed to properly evaluate the medical opinion evidence. Specifically, she argues that he erred in according very little weight to Dr. Sheehan's non-treating source opinion and great weight to Dr. Bergman-Harms's non-examining source opinion. (Pl. Br. 14-15). She acknowledges that the ALJ discounted Dr. Sheehan's opinion because it is inconsistent with Dr. Sheehan's findings that Plaintiff demonstrated normal attention and concentration for task completion and was able to maintain a routine for household chores, laundry, and meal preparation. (Pl Br. 15) (citing R. 21). She argues that the ALJ erred because contrary to the ALJ's finding Dr. Sheehan's concern was with poor persistence and slow processing, not attention or concentration. And she argues that the ALJ failed to use the regulatory factors for evaluating medical opinions.

The Commissioner argues that the ALJ properly weighed the medical opinions. She argues that the ALJ properly found that Dr. Sheehan's findings regarding intact memory; unimpaired incidental recall; normal attention, concentration comprehension, and reasoning; and no deficits in judgment (normal attention and concentration for task completion) was inconsistent with her finding that it was doubtful that Plaintiff could concentrate and persist on even simple tasks during a normal workday in a competitive environment. (Comm'r Br. 11). She also argues that Plaintiff's daily activities confirm

the ALJ's finding that Dr. Sheehan's opinion is inconsistent with Plaintiff's ability to maintain a routine for household chores, laundry, and meal preparation, and that although the ALJ considered the regulatory factors, he is not required to expressly apply every factor. Id. at 11-13.

**A. Standard for Evaluating Medical Opinions**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[3] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, where a treating source opinion is not given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2016). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) ; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

"[T]he opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003) (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of non-treating sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the opinions. Watkins, 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B. Analysis**

Plaintiff has correctly summarized the ALJ's evaluation of Dr. Sheehan's opinion. But, she has shown no error in that evaluation. As the ALJ noted, Dr. Sheehan found Plaintiff's performance was within normal limits on clinical tasks of sustained attention and concentration. (R. 565). Dr. Sheehan also found that Plaintiff is able to bathe herself, is capable of doing laundry, and is able to prepare meals. Id. at 566. As the ALJ found, these findings by Dr. Sheehan are inconsistent with Dr. Sheehan's findings that Plaintiff's ability to concentrate and persist on even simple tasks is doubtful on a day-to-day basis. Plaintiff has not shown that a slow processing speed as found by Dr. Sheehan would preclude performance of short and simple instructions involving routine tasks, as assessed by the ALJ.

Plaintiff's argument that the ALJ did not analyze Dr. Sheehan's opinion using the regulatory factors is also unavailing. The ALJ stated he had considered the opinion evidence in accordance with the controlling regulations and rulings. Id. at 17. He specifically noted that Dr. Sheehan had an examining relationship with Plaintiff, and he specifically explained the inconsistencies between the record evidence and Dr. Sheehan's opinion. Each of these is a regulatory factor for weighing medical opinions. Moreover, as the Commissioner points out the court will not insist on a factor-by-factor analysis so long as the ALJ's decision makes clear the weight he gave to the medical opinion and the

reasons for that weight. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). Plaintiff has shown no error in weighing the medical opinions.

## IV. RFC Assessment

Plaintiff argues that the ALJ should have found a limited ability to stand and walk (Pl. Br. 17-19) and should not have found that Plaintiff can reach overhead frequently. Id. at 19-20. And Plaintiff's Brief explains how, in her view, the evidence supports her arguments. Id. at 17-20. The Commissioner argues that the ALJ reasonably assessed Plaintiff's RFC and cites to evidence which, in her view, supports the ALJ's RFC assessment. (Comm'r Br. 4-10).

### A. Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how plaintiff's impairments and related symptoms affect her ability to perform work related activities. Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2016) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2016) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has

provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2016).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner not with a medical source. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

**B. Analysis**

Plaintiff does not argue that the ALJ applied the incorrect legal standard when assessing RFC. And, she does not point to error in the ALJ's evaluation of the evidence relevant to RFC, or evidence which would preclude the RFC assessed by the ALJ.

Rather, she points to evidence which in her view supports limitations in standing and walking or limitations on overhead reaching.

The question is not whether there is evidence in the record which might support Plaintiff's allegations of disability, but whether the record evidence supports the ALJ's decision. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Absent a demonstration that the record evidence precludes, or cannot support the findings of the ALJ, Plaintiff's appeal to record evidence which supports her allegations of disability is merely a request that the court reweigh the evidence in her favor. That, it may not do. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 21st day of February 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**